J-S66032-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: I.M.W. AND C.F.W., Minors | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.W., Mother | No. 1079 MDA 2014 |

Appeal from the Decrees and Orders entered June 5, 2014,
in the Court of Common Pleas of Dauphin County,
Orphans' Court, at No(s): 17 AD 2012, 9 AD 2014,
CP-22-DP-0000097-2011, CP-22-DP-0000115-2012

BEFORE: BENDER, P.J.E., SHOGAN, and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED DECEMBER 09, 2014**

J.W. ("Mother") appeals from the Decrees and Orders granting the Petitions filed by the Dauphin County Social Services for Children and Youth ("the Agency") to involuntarily terminate her parental rights to her son, I.M.W., and daughter, C.F.W. (collectively "Children"), pursuant to section 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act, *see* 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b), and to change their permanency goal to adoption pursuant to section 6351 of the Juvenile Act, *see* 42 Pa.C.S.A. § 6351.[1] We affirm.

I.M.W. was born in August 2011, during the marriage of Father and Mother. Three days after his birth, I.M.W. was placed in the custody of the

---

[1] The trial court terminated the parental rights of the Children's father, C.W. ("Father"), and confirmed his consent to their adoption on March 6, 2014. Father has not filed an appeal, nor is he a party to this appeal.

Agency based upon Father's and Mother's lack of progress in meeting their service objectives with respect to the dependencies of I.M.W.'s older siblings. The Agency placed I.M.W. in a foster home, a pre-adoptive resource for I.M.W., with his older half-sister and two female cousins. I.M.W. has special needs, including delayed vision, a slightly underdeveloped brain, and a wandering eye. The trial court adjudicated I.M.W. dependent on August 24, 2011, and a placement goal of reunification was established. The Agency established Family Service Plan ("FSP") goals for Mother.

On March 2, 2012, the Agency filed a Petition against Mother for a goal change to adoption and the involuntary termination of parental rights. On September 10, 2012, the trial court entered a Decree, changing the placement goal to adoption and involuntarily terminating Mother's parental rights pursuant to subsections (a)(1), (2), (5), and (b). Mother appealed and this Court reversed the Decree and remanded the matter to the trial court, based on the absence of sufficient evidence to support the termination under subsections (a)(1), (2), (5), and (b). ***See In the Interest of I.M.W.***, 75 A.3d 553 (Pa. Super. 2013) (unpublished memorandum). Specifically, this Court concluded that there was insufficient evidence to show that Mother had failed to comply with her FSP objectives, and that it appeared that Mother was making progress on these objectives. ***See id***.

While the appeal regarding I.M.W. was pending, in late December 2012, Mother gave birth to C.F.W. In the days following C.F.W.'s birth, the

Agency filed a dependency Petition with respect to C.F.W. Following hearings, the trial court entered an Order, finding that aggravated circumstances existed under 42 Pa.C.S.A. § 6302, based on the recent termination of Mother's parental rights to I.M.W. The trial court entered a separate Order, adjudicating C.F.W. dependent and changing the permanency goal to adoption. On September 9, 2013, this Court affirmed the adjudication of C.F.W. as dependent, but vacated and remanded the goal change and aggravated circumstances orders, as those Orders had been premised on the Decrees relating to I.M.W., which this Court had previously reversed. *See In the Interest of C.W.*, 87 A.3d 376 (Pa. Super. 2013) (unpublished memorandum).

On June 18, 2013, October 17, 2013, and November 14, 2013, the trial court held additional permanency review hearings with regard to I.M.W. On April 9, 2013, July 16, 2013, October 17, 2013, November 14, 2013, and March 6, 2014, the trial court held additional permanency review hearings with regard to C.F.W.

On February 18, 2014, the Agency filed the Petitions seeking to terminate Mother's parental rights, and to change the permanency goal for the Children to adoption. On that same date, the Agency filed a Petition to confirm Father's consent to adoption as to the Children. On March 6 and 10, 2014, the trial court held hearings on the Petitions. The trial court set forth

a thorough review of the testimony presented at the hearings, which we adopt herein. **See** Trial Court Opinion, 7/23/14, at 2-8.[2]

On June 4, 2014, in a transcribed proceeding in court, the trial court granted the Petitions to terminate Mother's parental rights to the Children, and to change the permanency goal to adoption.[3]  The trial court entered the Decrees and Orders on the following day.  On June 26, 2014, Mother filed a Notice of Appeal,[4] along with a Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

---

[2] At the permanency review hearing, Mother's counsel stipulated to the admission into the record of the testimony of Candra Chang, the Children's family therapist at Pressley Ridge.  **See** N.T., 3/6/14, at 73-74.  Further, Mother did not present any witnesses, and neither the Agency nor Mother offered any exhibits for admission into evidence.

[3] Mother's counsel was present in the courtroom, but Mother failed to appear, despite attempts to provide notice to her.

[4] Despite the fact that the trial court entered separate Decrees and Orders for each child, Mother only filed one Notice of Appeal.  In her Notice of Appeal, Mother lists both children in the caption and the respective docket numbers of the Children's cases.  We recognize that generally "taking one appeal from separate judgments is not acceptable practice and is discouraged." **Gen. Elec. Credit Corp. v. Aetna Cas. & Sur. Co.**, 263 A.2d 448, 452 (Pa. 1970); **see also** Pa.R.A.P. 341, Note (stating that where "one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeal must be filed.").  While Mother improperly filed a single Notice of Appeal, we will not quash the appeal, as Mother plainly intended to appeal the Decrees and Orders of the Children and this case involves the termination of parental rights. **See In re K.T.E.L.**, 983 A.2d 745, 747 (Pa. Super. 2009) (stating that "[t]he extreme action of dismissal should be imposed by an appellate court sparingly, and clearly would be inappropriate when there has been substantial compliance with the rules") (citation omitted); **see also id**. at 748 (declining to quash or dismiss the appeal based upon this Court's objective to expedite the disposition of children's fast track cases).

In her brief on appeal, Mother raises the following issues:

1. Whether the trial court abused its discretion in changing the goal to adoption?

2. Whether the trial court committed reversible error by terminating [Mother's] parental rights?

Mother's Brief at 10.[5]

Mother argues that the Agency has failed to prove by clear and convincing evidence that her parental rights to Children should have been terminated. *Id*. at 33. Mother argues that, since this Court's reversal of the Decrees with regard to I.M.W. in April 2013, she has made significant progress on her FSP objectives, including completing reunification services, completing a parenting class, taking domestic violence counseling, and addressing her mental health issues. *Id*. at 27-30. Mother asserts that the Agency failed in its responsibility to reunify her with Children and improperly placed the burden of reunification on her. *Id*. at 30-31, 32. Mother contends that the Agency purposely created confusion with regard to her visitation rights, and then blamed her for failing to visit the Children. *Id*. at 31-32. Mother claims that the FSP's only remaining objective is her housing,

---

[5] Mother waived her first issue regarding the goal change by her failure to support this issue with any argument or citation to case law. *See In re W.H.*, 25 A.3d 330, 339 n.3 (Pa. Super. 2011) (stating that "[w]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."); *see also Lackner v. Glosser*, 892 A.2d 21, 29-30 (Pa. Super. 2006) (stating that arguments that are not properly developed are waived). Thus, we will only address Mother's claims regarding the termination of her parental rights.

which she asserts is problematic only because of her lack of financial resources. *Id*. at 33. She urges that the lack of financial resources and affordable housing is an insufficient basis upon which to terminate her parental rights. *Id*.

Further, Mother alleges that under section 2511(b), she has been financially dependent on Father's Social Security benefits, which were the source of income to pay for housing, and, since she is no longer in a relationship with Father, and has no employment, she has limited financial resources. *Id*. She also complains that there was no bonding assessment conducted in this matter. *Id*. at 28.[6]

We review an appeal from the termination of parental rights in accordance with the following standard:

> In an appeal from an order terminating parental rights, our scope of review is comprehensive: we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow: we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Termination of parental rights is controlled by section 2511 of the Adoption Act. *See* 23 Pa.C.S.A. § 2511. The burden is upon the petitioner

---

[6] In her Summary of the Argument, Mother asserts that the trial court never ruled on a joint motion for supersedeas filed on February 22, 2013. Mother's Brief at 21. However, there is no entry for a joint motion for supersedeas on the trial court's docket. Thus, we cannot grant relief on this assertion.

"to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid." *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). "[C]lear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id*. (citation and quotation marks omitted). Further, the "trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If competent evidence supports the trial court's findings, "we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa. Super. 2003).

Satisfaction of any one subsection of section 2511(a), along with consideration of section 2511(b), is sufficient for the involuntary termination of parental rights. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). In this case, we will review the trial court's decision to terminate Mother's parental rights based upon section 2511(a)(2) and (b), which state the following:

> **§ 2511. Grounds for involuntary termination**
>
> **(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * *

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003); *see also In re Adoption of S.P.*, 47 A.3d 817, 827 (Pa. 2012).

Regarding section 2511(b), the court inquires whether the termination of Mother's parental rights would best serve the developmental, physical and emotional needs and welfare of the child. *See In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). "Intangibles such as love, comfort, security, and stability

- 8 -

are involved in the inquiry into the needs and welfare of the child." ***In re C.M.S.***, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted). The court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. ***Id***.; ***see also In re K.Z.S.***, 946 A.2d 753, 762-63 (Pa. Super. 2008) (stating that where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists). Courts are not required to order a formal bonding evaluation by an expert and may assess the parental bond upon the observations and evaluations of social workers and case workers. ***In re K.M.***, 53 A.3d 781, 791 (Pa. Super. 2012). Additionally, trial courts "should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child." ***In re N.A.M.***, 33 A.3d 95, 103 (Pa. Super. 2011) (citation omitted). Finally, the focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child under section 2511(b). ***In re Adoption of C.L.G.***, 956 A.2d 999, 1008 (Pa. Super. 2008).

Here, the trial court addressed Mother's claims and determined that the Petitions to involuntarily terminate her parental rights to Children, and to change their permanency goal to adoption, were properly granted. ***See*** Trial Court Opinion, 7/23/14, at 10-12; ***see also id***. at 2-8 (wherein the trial court sets forth a review of the relevant testimony presented at the

hearing). After a careful review of the record in this matter, we conclude that there is competent evidence in the record that supports the trial court's credibility and weight assessments regarding section 2511(a)(2); that Mother is incapable of parenting the Children, who have Fragile X syndrome; and that, even after a team worked with Mother to understand their needs, the conditions that led to their removal still exist, and will not be remedied by Mother in the future.

Under section 2511(b), the competent evidence of record supports the trial court's determinations that the termination of Mother's parental rights best serves the Children's needs and welfare. Indeed, competent evidence supports the trial court's finding that there is an absence of any bond with Mother, as both Children were placed in foster care essentially at birth. *See In re K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008) (stating that no bond worth preserving is formed between a child and a natural parent where the child has been in foster care for most of the child's life, and the resulting bond with the natural parent is attenuated). Thus, the trial court did not abuse its discretion in finding competent evidence to support the termination of Mother's parental rights under section 2511(a)(2) and (b). *See In re Adoption of S.P.*, 47 A.3d at 826-27.

Decrees and Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/9/2014

IN THE INTEREST OF

I.M.W.
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, minors
C.F.W.

: IN THE COURT OF COMMON PLEAS
: DAUPHIN COUNTY, PENNSYLVANIA
:
:
: 17-AD-2012; CP-22-DP-97-2011
: 9-AD-2014; CP-22-DP-115-2012
:
: IN DEPENDENCY

### TRIAL COURT MEMORANDUM OPINION PURSUANT TO PENNSYLVANIA RULE OF APPELLATE PROCEDURE 1925(a)

J.W.

Presently before the Superior Court of Pennsylvania is the appeal of ▓▓▓▓▓▓▓▓

(Mother), mother of the above named minor children, from this Court's Order of June 4, 2014

wherein we granted a termination of parental rights and goal change to adoption.

### Procedural History

On February 14, 2014, Dauphin County Children and Youth Services (CYS) filed

I.M.W

Petitions for Involuntary Termination of Parental Rights for both ▓▓▓▓▓▓▓▓▓▓▓▓ (I.M.W.)

C.F.W

(DOB 8/8/2011) and ▓▓▓▓▓▓▓▓▓▓▓▓ (C.F.W.) (DOB 12/24/2012). This Petition was filed

C.W.'s

in conjunction with ▓▓▓▓▓▓▓▓ (Father) Consent to Adoption which was filed on

November 14, 2013 with regard to both children.

I.M.W. was placed in a foster home on August 11, 2011 following the filing of a

Dependency Petition by CYS. Thereafter, on August 24, 2011, I.M.W. was found dependent

after an Adjudicatory and Dispositional hearing held on that date and was placed into the legal

custody of CYS where he has remained continuously. Permanency Review hearings were held

on January 4, 2012; November 13, 2012; February 19, 2013; June 18, 2013; October 17, 2013;

and November 14, 2013.

FILED

JUL 2 3 2014

JEAN MARFIZO KING
REGISTER OF WILLS AND
CLERK OF THE ORPHANS' COURT

C.F.W. was placed in a foster home on December 27, 2012 and has remained there since that date. Following a combined Shelter Care hearing, Adjudication and Disposition hearing and Goal Change hearing, this Court found C.F.W. dependent and legal custody was awarded to CYS. [1] Permanency Review hearings were held on April 9, 2013; July 16, 2013; October 17, 2013; November 14, 2013; and March 6, 2014.

A hearing was held on March 6, 2014 regarding the Petition for Involuntary Termination of Parental Rights filed by CYS. On June 4, 2014 this Court entered an Order granting a goal change to adoption and terminating the parental rights of Mother in the children. Thereafter, on June 26, 2014, Mother filed Notice of Appeal along with a Statement of Matters Complained of on Appeal from this Court's June 4, 2014 Order.

## Factual Background

Candra Chang is a family therapist at Pressley Ridge. (Notes of Testimony, March 6, 2014, 75). Ms. Chang testified that she began working with Mother on June 18, 2013. (N.T., 76). She added that Pressley Ridge had been involved in reunification services with Mother on three (3) different occasions. (N.T., 88). Although Mother testified that she successfully completed reunification services in September of 2013, Ms. Chang testified that services were closed on November 18, 2013 because Mother said she did not want to follow through with reunification. (N.T., 76). At that point, Ms. Chang explained to Mother that services would no longer be provided. (N.T., 76-77). Ms. Chang made an appointment to meet with Mother on November 19, 2013 to discuss reunification, but Mother was not home and failed to call or cancel the appointment. (N.T., 77). Mother never attempted to contact Ms. Chang after that time and into 2014. (N.T., 77).

---

[1] On January 22, 2013, this Court ordered a goal change to adoption following a finding of Aggravating Circumstances against ▓▓▓▓▓▓▓▓. However, this Order was overturned by the Superior Court on September 9, 2013. Mother and Father

2

Ms. Chang discussed Mother's reunification goals; one of those goals was to maintain stable housing for six (6) months. (N.T., 78). Mother has moved a total of eighteen (18) times since 2009. (N.T., 138). Ms. Chang recounted that when Mother was living in a boarding house with numerous people, Mother asked Pressley Ridge to meet with her out on the sidewalk and Pressley Ridge was never invited into the home. (N.T., 84-85). Ms. Chang added that Pressley Ridge did attempt to help Mother find a shelter. (N.T., 86). On November 6, 2013, when Ms. Chang told Mother that Mother could get help with housing by going to the help office by 6 a.m., Mother replied that she did not want to walk that early. (N.T., 87).

Another of Mother's goals was to engage in healthy relationships with peers and family members. (N.T., 84). This required that any adults in Mother's home were to be approved by CYS. (N.T., 84). However, Ms. Chang noted that at one point, Mother had a male family member in the home who Mother said punched her in the face; CYS did not feel that he was an appropriate person to have in the home. (N.T., 84). Ms. Chang testified that Mother constantly had to be reminded to focus on her kids as opposed to focusing on other individuals. (N.T., 84). Mother testified that she had regularly been attending individual counseling since 2012 with a brief hiatus between January of 2014 and March of 2014. However, Ms. Chang testified that Mother did not attend individual counseling while working with Pressley Ridge. (N.T., 88).

Ms. Chang testified that Pressley Ridge worked with Mother on understanding the needs of a child with Fragile X and though Mother did improve, the improvement did not rise to the level that would allow Mother to have I.M.W. in her home. (N.T., 82-83). Ms. Chang added that Mother was never told that she was not allowed to have visits with I.M.W. in the community. (N.T., 83).

3

Mother was also unsuccessful with the goal requiring her to attend domestic violence counseling. (N.T., 78). This was because throughout services, Mother denied any domestic violence issues even though the team observed bruises on her body on more than one occasion. (N.T., 78). According to Ms. Chang, Mother's denial kept Pressley Ridge from being able to move forward with that goal. (N.T., 78-79). Father testified in November of 2013 that he wanted to voluntarily terminate his parental rights in the children and Mother threatened to call probation. (N.T., 80-81). Although Mother testified that Pressley Ridge held it against her when Father would miss visitations, Ms. Chang confirmed that this was not true. (N.T., 81, 85-86). Ms. Chang explained that Mother was not asked to sign an attendance contract until both parents missed appointments and that Pressley Ridge still met with Mother even when Father was not in attendance. (N.T., 81). She added that services ended because Mother told Ms. Chang on two separate occasions that she no longer wished to continue services and did not want to work toward reunification. (N.T., 86).

Rowena Rivera is a pediatric neurology physician employed by Hershey Children's Hospital. (N.T., 94). Dr. Rivera began working with I.M.W. on September 14, 2012. (N.T., 95). Dr. Rivera diagnosed I.M.W. with Fragile X syndrome, autism, attention hyperactivity disorder (ADHD) and moderate mental retardation. (N.T., 97). Dr. Rivera explained that I.M.W. is at an increased risk of seizures, behavioral problems like hyperactivity and aggression, hitting, eye problems, abnormalities of the spine and foot as well as cognitive delays. (N.T., 99). Dr. Rivera added that I.M.W. will need regular visits with Dr. Rivera every six (6) months to one (1) year or acutely when I.M.W. develops any of the above-mentioned issues. (N.T., 99). Dr. Rivera added further that I.M.W. will need regular medical visits throughout his development with eye doctors, orthopedic doctors, developmental pediatricians and psychiatrists or

4

psychologists if he develops any of the above-mentioned issues. (N.T., 100-101). According to Dr. Rivera, this will require a high amount of care from I.M.W.'S caregiver. (N.T., 101).

Kelly Colbey is a caseworker with Dauphin County Children and Youth and has worked with the ████ family since November of 2009. (N.T., 107). Ms. Colbey testified that Mother's averment that she attempted to reach Ms. Colbey in December and January is untrue. (N.T., 117). Ms. Colbey added that she attempted to reach Mother after Mother failed to attend a scheduled visit on December 2, 2013 and did not hear back from Mother until January 13, 2014 when Mother called and said that she had a miscarriage and now wanted to work toward reunification with I.M.W and C.F.W. (N.T., 117).

Ms. Colbey discussed the grounds for termination of Mother's parental rights. Under Pa.C.S. §2511(a)(1), Ms. Colbey noted that Mother made no progress in performing parental duties in a span of six (6) months. (N.T., 130). She added that Mother failed to obtain stable housing for three (3) to six (6) months because since 2009, Mother has moved a total of eighteen (18) times. (N.T., 132). Even after being offered services with CYS in 2009 and with Pressley Ridge on three (3) occasions, Mother was unsuccessfully discharged each time. (N.T., 134).

Under Pa.C.S. §2511(a)(2), Ms. Colbey testified that Mother does not have the capacity to parent the children. (N.T., 138). She added that Mother would not accept that the goals were not being met. (N.T., 139). Mother tries to console the children, however the children cry throughout all the visits with Mother and Mother cannot get the children past that. (N.T., 140). Ms. Colbey said that Mother does not have the ability to soothe I.M.W. (N.T., 141). Ms. Colbey noted that during one visit, Mother had to be prompted twice in one (1) hour to check I.M.W.'s diaper even though she was told to check the diaper before the visit even started. (N.T., 143). Additionally, there was a visit scheduled to take place immediately after the January 10, 2013

5

hearing, but Mother left the building without indicating to the caseworker that she would not be attending the visit. (N.T., 143). Mother did not contact CYS to schedule a visit again until September 23, 2013. (N.T., 148).

Ms. Colbey noted that from December of 2012 to September of 2013, Mother had visits with I.M.W., but during that time, Mother never asked to see C.F.W. (N.T., 148). Ms. Colbey added that while walking into a hearing in April and again in July, Mother walked by C.F.W. without acknowledging the child. (N.T., 144-145) (see also Notes of Testimony, March 10, 2014, 34).

Ms. Colbey testified that based on Mother's actions, she cannot parent two (2) children with mental health needs, especially since I.M.W. will require doctor's appointments at Hershey Medical Center on a regular basis. (N.T., 152). I.M.W.'s care will also require physical therapy and occupational therapy. (N.T., 153). C.M.W. will require physical therapy, occupational therapy and special instruction appointments. (N.T., 153). This will require a high amount of care on the part of caregiver. (N.T., 153).

Under Pa.C.S. §2511(a)(5), Ms. Colbey testified that Mother continues to lack stable housing and continues to live with individuals who are not approved by CYS. (N.T., 154). Mother continues to deny the existence of domestic violence even though the Pressley Ridge team members have observed bruising on Mother's body on several occasions. (N.T., 155). Mother's lack of commitment to the children is evidenced in the way Mother constantly vacillates between voluntarily relinquishing her rights to the children and then revoking that consent. (N.T., 155). Ms. Colbey testified that this has been a constant pattern. (N.T., 156).

Regarding Pa.C.S. §2511(a)(8), I.M.W. has been removed from Mother's home for over thirty (30) months and C.F.W. has been removed from Mother's home for over fifteen (15)

6

months. (Notes of Testimony, March 10, 2014, 6). According to Ms. Colby, the conditions for the removal of both children still exist. (N.T., 6). CYS's concerns include Mother's failure to continue mental health treatment, the instability of Mother's housing, Mother's refusal to stay away from individuals deemed inappropriate by CYS and Mother's failure to meet the objective regarding domestic violence counseling. (N.T., 7, 12-13).

With regard to C.F.W., Mother failed to attend any of C.F.W.'s regular "well baby" appointments. (N.T., 27-28). Additionally, Mother only visited C.F.W. a total of five (5) times in fifteen (15) months. (N.T., 29). Ms. Colbey noted that once the goal was changed back to reunification, there was nothing that prevented Mother from requesting visits with C.F.W.; however, Mother did not request visits. (N.T., 30-31). Mother performed very few parental duties since the children came into care. (N.T., 29). According to Ms. Colbey, there is no bond between Mother and C.F.W. (N.T., 29).

Ms. Colbey testified that it is in the best interests of C.F.W. and I.M.W. to terminate Mother's parental rights. (N.T., 7). Ms. Colbey added that with both children being diagnosed with Fragile X, they require a consistent surrounding environment. (N.T., 7). Ms. Colby also testified that the needs of the children are being met in their foster homes; this includes extensive visits to Hershey Medical Center with ophthalmology, neurology, audiology and geneticists. (N.T., 8). I.M.W. looks to ███████████ (foster parents) as if they are his parents. (N.T., 9). If I.M.W. is hurt or crying, he looks to his foster parents and they are able to soothe him. (N.T., 9). Also, because of I.M.W's speech and communication delays, the foster parents are able to pick up on I.M.W.'s non-verbal cues when he is frustrated. (N.T., 9).

I.M.W. has lived in his pre-adoptive foster home since August of 2011. (N.T., 114). Ms. Colby testified that I.M.W. lives in his foster home with his half sibling and biological cousins.

7

(Notes of Testimony, March 6, 2014, 113). I.M.W. bonds with them and plays with them in the foster home, which is not typical of children with Fragile X. (N.T., 113). Ms. Colby noted that after Mother stopped attending I.M.W.'s physical therapy appointments, his progress got better. (N.T., 125).

Ms. Colbey reported that C.F.W. is also doing very well in her pre-adoptive home with H. G. ▓▓▓▓▓▓ (foster parent). (N.T., 107). C.F.W. has been in this foster home since December 27, 2012. (N.T., 108). In the foster home, C.F.W. is making positive strides with walking and continues to grow and make progress. (N.T., 109). Additionally, C.F.W. and I.M.W.'s foster families do get together so C.F.W. and I.M.W. can visit together on a monthly basis. (N.T., 110).

## Statement of Errors Complained of on Appeal

Mother raises the following alleged errors on appeal:

a. Whether the trial court committed reversible error in adjudicating dependent, 42 Pa.C.S. §6302, In re R.W.J., 826 A.2d 10 (Pa. Super. 2003), the minors, I.M.W. and C.F.W., under the Juvenile Act, 42 Pa.C.S. §6301 *et seq.*, upon evidence sufficient to meet a clear and convincing standard, 42 Pa.C.S. §6341(c).

b. Whether the trial court committed reversible error by granting a goal change to adoption under the Juvenile Act, 42 Pa.C.S. §6301 *et seq.*, and thereby denying any good faith effort by the Agency in providing reasonable efforts to prevent the minors' removal and retain Mother's family unity.

c. Whether the trial court committed reversible error by involuntarily terminating Mother's parental rights a goal change [sic] to adoption under the Juvenile Act, 42 Pa.C.S. §6301 *et seq.*, and thereby denying any good faith effort by the Agency in providing reasonable efforts to prevent the minor's removal and retain Mother's family unity.

(Statement of Errors, (I)(a-c)).

## Discussion

8

When reviewing the trial court's decision to modify permanency goals, an appellate court may only modify the trial court's decision where there has been an abuse of discretion. An abuse of discretion occurs "'when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.'" In the Interest of A.L.D., 797 A.2d 326, 336 (Pa. Super. 2002) (quoting In re Adoption of Atencio, 650 A.2d 1064, 1066 (Pa. 1994)). When a trial court reviews a motion for a goal change the court must look to the best interests of the child, including the safety, protection, moral and mental welfare of the child. 42 Pa.C.S. § 6351(g). In its review of the testimony presented at a permanency hearing, the trial court "is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." In re M.G., 855 A.2d 68, 73-74 (Pa. Super. 2004). Additionally, this Court notes that our Superior Court has held that parents are required to make diligent efforts in assuming full parental responsibilities. In re A.L.D., 797 A.2d 326, 340.

On appeal, Mother asserts that that this Court committed a reversible error in adjudicating the children dependent, terminating Mother's parental rights and granting a goal change to adoption. The Juvenile Act provides in relevant part:

> (f) Matters to be determined at permanency hearing. -- At each permanency hearing, a court shall determine all of the following:
>
> * * *
>
> (9) If the child has been in placement for at least 15 of the last 22 months or the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made, whether the county agency has filed or sought to join a petition to terminate parental rights and to

9

We note that even though Mother testified that she was not given a service plan, this Court finds that Mother was provided with the service plan on two occasions and refused to sign it. Mother was not successful in maintaining stable housing or domestic violence counseling and failed to attend individual counseling as required. We further note that Mother has made no substantial progress in the last six (6) months toward accomplishing goals and has made little progress in parenting. We also found that Mother had missed numerous appointments with CYS and has failed to communicate for periods of time with CYS. Mother failed to request visitation with C.F.W. and on more than one occasion, walked past her children without even acknowledging them. Mother's failure to accomplish goals and her conduct throughout the case evidence a lack of interest in reuniting with the children.

In terms of services provided, Mother has been involved with Pressley Ridge on three (3) different occasions and all of Mother's attempts at reunification have failed each time. Mother even stated to Pressley Ridge that she did not want to pursue reunification with the children. In the past, Mother has had her parental rights terminated for four (4) children. CYS referred Mother to JusticeWorks and STOPP, but those services were closed because the provider felt that Mother could not be helped.

This Court considered the testimony that C.F.W. and I.M.W. are Fragile X children who have needs which Mother is incapable of meeting. These children require a caregiver who can provide constant attention and the ability to transport the children to a significant number of medical appointments. In the past, Mother's attendance at medical appointments was sporadic and Mother has failed to attend "well-baby" appointments. Mother clearly does not have the capacity to provide the care these children require even after the team worked with Mother to understand the needs of children with Fragile X.

11

This Court found that there was no bond between Mother and the children. C.F.W. has been in care for over fifteen (15) months and I.M.W. has been in care for over thirty (30) months. This Court also noted that the conditions leading to removal of the children still exist. Furthermore, this Court is confident that the significant needs of the children are being met in their respective foster homes. In fact, both children are happy and thriving in their foster homes. Based on the above, we held that terminating Mother's parental rights in C.F.W. and I.M.W. was paramount to the safety, protection and physical, mental and moral welfare of the children.

Accordingly, we respectfully request the Superior Court to affirm our Order of June 4, 2014 and dismiss the appeal in this matter.

Respectfully submitted,

John F. Cherry, Judge

Dated July 23, 2014

Distribution:

The Superior Court of Pennsylvania
Damian J. DeStefano, Esquire, 2331 Market Street, Camp Hill, PA 17011
Marisa K. McClellan, Dauphin County Social Services for Children and Youth, 1001 N. 6th Street, Harrisburg, PA 17102
Mindy Goodman, Esquire, Guardian Ad Litem, 2215 Forest Hills Drive, Suite 35, Harrisburg, PA 17112
Sarah E. Hoffman, Esquire, Guardian Ad Litem, P.O. Box 4468, Harrisburg, PA 17111
Robert Sisock, Deputy Court Administrator
Judge Cherry

12